UNITED STATES BANKRUPTCY COURT                Hearing Date: October 16, 2025
EASTERN DISTRICT OF NEW YORK                  Hearing Time: 1:00 p.m.
----------------------------------------------------------------x
                                                              :
In re                                                         :      Chapter 11
                                                              :
MMRE MANAGEMENT - PATRIOT PLACE,                              :      Case No. 1-25-43514-jmm
LLC,                                                          :
                                                              :
                              Debtor.                         :
                                                              :
----------------------------------------------------------------x

### CAPITAL FUNDING, LLC'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF GEORGIA

TO:     HONORABLE JIL MAZER-MARINO,
        UNITED STATES BANKRUPTCY JUDGE:

        Capital Funding, LLC (the "**Secured Lender**") hereby submits this reply (the "**Reply**") in support of the *Motion of Capital Funding, LLC to Transfer Venue to the United States Bankruptcy Court for the Northern District of Georgia and Incorporated Memorandum of Law* [Dkt. No. 10] (the "**Motion**"). In support of this Reply, the Secured Lender respectfully represents as follows:

### INTRODUCTION[1]

        1.      The Debtor spends majority of the Opposition attempting to establish that venue is proper in this Court because the Debtor's supposed principal place of business and "nerve center" is located at the Brooklyn Address. However, the Brooklyn Address is, upon information and belief, merely the residence of the Debtor's sole member, Mordechai Mendelovitz, and can hardly be considered the Debtor's "nerve center" when no decisions regarding the Debtor's sole asset, the Property, are made from the Brooklyn Address. Prior to the appointment of the Receiver, all

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion. *Motion of Capital Funding, LLC to Transfer Venue to the United States Bankruptcy Court for the Northern District of Georgia and Incorporated Memorandum of Law* [Dkt. No. 10] (the "**Motion**").

decisions regarding the Property were made by Austell Portfolio MM, LLC pursuant to the Tenancy in Common Agreement, and at all relevant times the day-to-day operations were managed by a real property management company operating in Georgia. Following the appointment of the Receiver, the Property and its management were controlled by the Receiver, who contracted with a Managing Agent also operating on-site in Georgia. Additionally, the Debtor is a single purpose entity whose sole business is the ownership of the Property, which is located in Georgia, and the Debtor is not even licensed to conduct business in the State of New York.

2.      Further, the Opposition spends little time addressing the Secured Lender's position that the interest of justice and the convenience of parties warrants the transfer of this Chapter 11 case to the Northern District of Georgia. Rather, the Debtor attempts to distinguish the cases cited in the Motion by simply asserting that this case involves decision making, books and records, and primary witnesses located in the Eastern District of New York. These supposed distinctions ignore the fact that the cases cited in the Motion are, as discussed below, markedly on point, especially considering the numerous connections the Debtor has with the Northern District of Georgia, including: (i) the Debtor is a Georgia limited liability company; (ii) the Debtor is a Single Purpose Entity[2] whose sole reason to exist is for the operation of the Property, which is located in the Northern District of Georgia; (iii) the Property is the Debtor's only asset and is located in the Northern District of Georgia; (iv) the manager of the Property under the Tenancy in Common Agreement, the TIC Manager, is a Georgia limited liability company; (v) majority of creditors are located in Georgia; (vi) all tenants of the Property are located in the Northern District of Georgia; (vii) the Receiver was appointed by the Georgia State Court to manage and preserve the value of the Property; (viii) the Receiver contracted with the Managing Agent, a real property management

[2] A "Single Purpose Entity" is a "Person which owns no interest or property other than the Property and the Improvements." Motion, Exhibit C at § 1.1.

company in Georgia, to manage the Property; and (ix) the Debtor's co-tenant of the Property, Five 7 Five, is also a Georgia limited liability company.

3.      Lastly, the Debtor also asserts that the convenience of parties should consider the availability of virtual hearings and electronic filings and ignores that Judge Mazer-Marino exclusively conducts evidentiary hearings in person.

4.      Accordingly, the Court should grant the Motion and transfer this Chapter 11 case to the Northern District of Georgia.

<u>**ARGUMENT**</u>

**A.      *<u>The Brooklyn Address is not the Debtor's "nerve center."</u>***

5.      The substantial majority of *Debtor's Opposition to Motion to Change Venue* [Dkt. No. 21] (the "**Opposition**") is spent arguing that venue is proper in this Court because the Debtor's supposed "nerve center" is the Brooklyn Address. *See* Opposition ¶¶ 11–15. Upon information and belief, however, the Brooklyn Address is merely the residence of the Debtor's sole alleged member, Mordechai Mendelovitz. *See* Mot., Ex. H (the "**Dwyer Declaration**") ¶ 18. Notwithstanding the fact that Mr. Mendelovitz may reside at the Brooklyn Address, the Debtor has scant connection to this venue otherwise.

6.      The Debtor is a Georgia limited liability company and is not registered to do business in the State of New York. *See* Dwyer Decl. ¶ 3; Mot., Ex. I (the "**Zabarauskas Declaration**"). ¶ 2. Additionally, the Debtor is a single purpose entity whose sole business is the ownership of the Property, which is located in Georgia. *See*, Loan Agreement § 3.4 ("Borrower is a Single Purpose Entity that has not engaged in any business other than the acquisition of and owning of the Property and the undertaking of the Project."). Debtor argues that its problems are financial and that its "heart" and "soul" lie in New York. *See* Opposition ¶ 13. And yet, the sole reason for Debtor's existence is in Georgia, and the only state in which the Debtor is legally

authorized to do business is in Georgia. While the "nerve center" analysis seeks to equate a debtor's principal place of business with the offices where the debtor makes its major business decisions, "to find a principal place of business where a debtor has no physical presence and was formed pursuant to the laws of another state is an anomaly that could not have been contemplated by Congress in enacting 28 U.S.C. § 1408." *In re Bell Tower Assocs.*, 86 B.R. 795, 800 (Bankr. S.D.N.Y. 1988); *see also In re FRG, Inc.*, 107 B.R. 461, 469 (Bankr. S.D.N.Y. 1989) (finding that the residence of partners in a limited partnership has little relevance when determining venue, and the only meaningful factors are the location of the principal place of business and the location of the assets).

7.    Additionally, while Mr. Mendelovitz allegedly is located in New York, no decisions regarding the Property—again, the Debtor's sole asset and reason for existence—are made in New York or, for that matter, by Mr. Mendelovitz. Per the Tenancy in Common Agreement, all major decisions relating to the management of the Property and all aspects thereof are managed by Austell Portfolio MM, LLC, which is also a Georgia limited liability company. *See* Dwyer Decl. ¶ 6; Tenancy in Common Agreement § 1.2; Loan Agreement, Schedule 3.21 (providing an organizational chart listing Austell Portfolio MM, LLC as a Georgia limited liability company). At all relevant times prior to the appointment of the Receiver, the Property was managed by a third-party property manager operating locally in Georgia. Dwyer Decl. ¶ 7. And following the appointment of the Receiver, the Property was managed by and in the possession of the Receiver, who entered into a management agreement with another real property management company operating in Georgia. *Id.* ¶¶ 13–14. The Debtor itself even admits that it historically had no direct role in the operations of the Property. *See* Opposition ¶ 10 ("Although initially a financial investor, the Debtor has attempted to pursue a more direct role in the operations of the Property,

including the drafting and circulation of a proposed restructuring term sheet to the Lender and the recruitment of a new management company."). The Debtor further acknowledges that its listed principal office at the so-called Lawrence Address is the office of Moshe Horn, who the Debtor blames for mismanaging the Property—another tacit admission that the Brooklyn Address has little to do with any decision-making with regard to the Debtor or the Property.

8.      Thus, contrary to the Debtor's assertions, the Brooklyn Address is hardly the Debtor's "nerve center," and the fact that Mr. Mendelovitz may reside there should carry little weight in this Court's decision regarding venue.

   **B.      _The interest of justice and for the convenience of the parties weigh in favor of transfer to the Northern District of Georgia._**

9.      The Motion goes to great lengths to demonstrate that transfer of this case to the Northern District of Georgia is both in the interest of justice and for the convenience of the parties, the Debtor spends little time in the Opposition refuting this or addressing the factors that courts consider when making such determinations. Instead, the Debtor feebly attempts to distinguish cases cited in the Motion on the basis that books and records and the Debtor's sole member is located in New York. Opposition ¶¶ 17-18. The Debtor significantly overstates these distinctions and outright ignores the inconvenient holdings of these cases, which remain remarkably on point.

10.      As in _In re Pinehaven Associates_, "[t]he Debtor exaggerates the nexus of the Eastern District of New York to the administration of its Chapter 11 case."  132 B.R. 982, 889 (Bankr. E.D.N.Y. 1991). The Debtor argues that _Pinehaven_ does not apply because the principals and books and records are located in New York and not in Georgia. The Debtor, however, ignores the fact that that every other consideration discussed in _Pinehaven_ is on point to the facts before this Court and supports this Chapter 11 case's transfer to the Northern District of Georgia. In _Pinehaven_, the debtor filed for bankruptcy in the Eastern District of New York, where its offices

5

were located there and where major decisions and general supervision were made. *Id.* at 984. The Court nevertheless transferred the case to Mississippi because the debtor's single asset was located in Mississippi, the property's operation was delegated to a management company that was located in Mississippi, the debtor's creditors were primarily located in the local Mississippi-Memphis area, and the valuation of the property would be key to the bankruptcy case. *Id.* at 986-90. The court found that the venue was "chosen for the personal preference and convenience of one man, [the debtor's principal], and also to make this Chapter 11 case more burdensome to creditors and other interested parties, particularly the party with the largest claim." *Id*. at 990. Further, "the concern for the limited partners, who are holders of equity interests, is less than for creditors where, as here, the Debtor admits its insolvency." *Id*. at 988 n.8.

11.    Here, the Debtor is a single asset real estate case, the Property is located in the Northern District of Georgia, the Property is managed by a company governed under Georgia law, majority of the Debtor's creditors are in Georgia,[3] and the Property's valuation is key to this Chapter 11 case, especially considering that mismanagement led to the Property's condition declining and requiring substantial repairs. The Debtor argues that its intention is for the Chapter 11 case to turn towards a potential restructuring, which will undoubtedly involve valuation of the Property in Georgia, not New York.

12.    The Debtor similarly attempts to distinguish *In re Seton Chase Associates, Inc.*, 141 B.R. 2 (Bankr. E.D.N.Y. 1992). In *In re Seton Chase Associates, Inc.*, the Court considered more factors than simply the location of the debtor's principals, books and records, and witnesses likely to testify to justify transferring venue and found that transferring venue from the Eastern District

---

[3] The Debtor asserts that the Secured Lender, "is located in Maryland, the mortgage loan is governed by Maryland law and any foreclosure action is properly venued in Baltimore, Maryland." The Debtor, however, is mistaken, because the foreclosure of real property is properly venued in the state in which the property is located.

of New York to the Southern District of Texas was appropriate because (i) the debtor's assets were located in Houston; (ii) the real property taxing authority who assesses the property was located in Houston; (iii) the debtor's managing and leasing agents were located in Houston; (iv) the debtor's creditors were located in Texas; and (v) the economic and efficient administration of the Debtor's estate would best be served in the Southern District of Texas. *See id.* at 5–7. The circumstances in *In re Seton Chase Associates, Inc.* mirror the facts before the Court. Here, the Debtor's only asset is located in the Northern District of Georgia, any property taxing authority is in Georgia, the Debtor is managed in Georgia and governed by Georgia law, the majority of creditors are located in Georgia, and the administration of the estate would best be served in Georgia.

13.    The Debtor attempts to distinguish *In re Ofia Realty Corp*., 74 B.R. 574 (Bankr. S.D.N.Y. 1987), by arguing that the court's decision there to transfer venue to the Southern District of Texas was based on the fact that "the property, managing agent and business transactions were all in Texas and governed by Texas law." Opposition ¶ 17. This argument seems to imply that such circumstances are not present here. The Debtor fails to recognize that, similar to *Ofia Realty*, the Debtor, Five 7 Five, the Managing Agent, the Receivership, landlord-tenant issues, and the Property are all governed by Georgia law. Here, except for Mr. Mendelovitz's residence, every other aspect of the debtor's business points to Georgia. *See In re Ofia Realty Corp.,* 74 B.R. at 577.

14.    Lastly, the Debtor attempts to distinguish *In re Virginia Park 1, LLC*, No. 25-11308 (MG), 2025 WL 2086393 (Bankr. S.D.N.Y. July 25, 2025), because the "Property is already developed such that local laws relating to construction, permits and licensing are not at issue." Opposition ¶ 19. The Debtor acknowledges that "the Property has been the subject of mismanagement, misapplication of funds, and other improprieties committed by Moshe Horn,

including the falsifying of documents," but fails to acknowledge that such mismanagement has led to the Property falling into serious disrepair that necessitates substantial repair work and maintenance to remedy the Property's condition. *Id*. ¶ 10. Further, the Property is not managed from New York but is under the management of the Receiver who was appointed by the Georgia State Court and who has contracted with the Managing Agent, who operates in Georgia. Similarly to *Virginia Park*, the Debtor was involved in prepetition litigation in Georgia related to the Receivership over the Property, the sole asset in the Debtor's estate, and this case is also in its early stages. *In re Virginia Park 1, LLC*, 2025 WL 2086393, at *10.

15.     Lastly, the Debtor argues that venue before this Court is more convenient than it would be in the Northern District of Georgia because creditors can participate in the case through electronic filing of pleadings and the availability of virtual hearings. Opposition ¶ 20. This ignores the fact that, under this Court's procedures, "Trials and Evidentiary Hearings will be conducted exclusively in-person." *See* United States Bankruptcy Court, Eastern District of New York, Information about Judges: Judge Jil Mazer-Marino, https://www.nyeb.uscourts.gov/content/judge-jil-mazer-marino (last visited Oct. 11, 2025).

16.     The Debtor ignores the possibility that creditors, parties in interest, and experts may be required to participate in evidentiary hearings in this Chapter 11 case. *See In re Pinehaven Assocs.*, 132 B.R. 982 ("Requiring [Mississippi] experts to come to Brooklyn, New York to educate a Brooklyn bankruptcy judge as to the value of [Mississippi] property will impose unnecessarily great expenses . . . , and will serve neither the interest of justice, nor the convenience of the parties." (quoting *In re Developers of Caguas, Inc.*, 26 B.R. 977, 980 (Bankr. E.D.N.Y.))); *In re Bell Tower Assocs.*, 86 B.R. at 803("There is no doubt that courts can and do value property far from the courthouse. Such valuations are usually done on the basis of discounting future

income. But it is quite another task to address a claim of structural damage and whether 334 apartments located some 1500 miles from the courthouse are in compliance with local building codes. The former requires the testimony of two appraisers assessing income, risk factors and industry trends. The latter requires testimony of local fact witnesses. Such local disputes should be decided locally." (citations omitted)). Further, to the extent issues arise related to the assumption or assignment of tenant leases, it would be fundamentally unfair to require such tenants to appear in New York.

17.     The interest of justice and the convenience of parties clearly warrant transfer to the Northern District of Georgia.

WHEREFORE, the Secured Lender respectfully requests the Court grant the Motion, transfer venue of this Chapter 11 case to the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, and grant such other and further relief as the Court deems just and proper.

*[Remainder of page left intentionally blank]*

Dated: October 13, 2025
         New York, New York

                              Respectfully submitted,

                              HOLLAND & KNIGHT LLP

                              By: /s/ Bruce J. Zabarauskas
                              Bruce J. Zabarauskas
                              Tyler N. Layne
                              787 Seventh Avenue, 31st Floor
                              New York, New York 10019
                              Tel.: (212) 513-3200
                              Bruce.Zabarauskas@hklaw.com
                              Tyler.Layne@hklaw.com

                              *Attorneys for Capital Funding, LLC*

## <u>CERTIFICATE OF SERVICE</u>

Bruce J. Zabarauskas, hereby declares:

1.      I am an attorney duly admitted to practice law in the States of New York, Texas, and California and admitted to practice before this Court.

2.      Pursuant to Local Rule 9036-2, on October 13, 2025, I served a true and correct copy of the prefixed *Capital Funding, LLC's Reply In Support Of Motion To Transfer Venue To The United States Bankruptcy Court For The Northern District Of Georgia (the "Reply")* through the Court's electronic case filing system, and emailed a copy of the notice of electronic filing in connection therewith as well as a copy of the Reply upon the following; (i) counsel for the Debtor, J. Ted Donovan at tdonovan@gwfglaw.com, and Kevin Nash at knash@gwfglaw.com and Ravi Vohra at rvohra@gwfglaw.com   (ii) Jeremy Susman, Office of the United States Trustee at Jeremy.S.Sussman@usdoj.gov.

Dated: October 13, 2025

/s/ Bruce J. Zabarauskas
Bruce J. Zabarauskas